UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEREMY L. D.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:20-cv-1026 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Jeremy D., on December 11, 2020. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Jeremy D., filed an application for Supplemental Security Income, alleging a disability onset date of January 1, 2009. (Tr. 15). The Disability Determination Bureau denied Jeremy D.'s applications initially on April 12, 2019, and again upon reconsideration on June 19, 2019. (Tr. 15, 82, 98). Jeremy D. subsequently filed a timely request for a hearing on July 16, 2019. (Tr. 124). A hearing was held on February 25, 2020, before Administrative Law Judge (ALJ) Livia Morales. (Tr. 33). Vocational Expert (VE) Charlotta Ewers also appeared at the hearing. (Tr. 33). The ALJ issued an unfavorable decision on March 26, 2020. (Tr. 15-27). The Appeals Council denied review making the ALJ's decision the final decision of the

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

Commissioner. (Tr. 1-6).

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Jeremy D. had not engaged in substantial activity since February 7, 2019, the application date. (Tr. 17).

At step two, the ALJ determined that Jeremy D. had the following severe impairments: bipolar disorder, borderline intellectual functioning, anti-social personality disorder, personality and impulse control disorder, major depressive disorder, anxiety disorder, left plantar fasciitis and calcaneal spur, and degenerative disc disease. (Tr. 17). Jeremy D. also alleged disability due to asthma, tremors, GERD, left shoulder pain, right lower leg extremity edema, and obesity. (Tr. 17-18). However, the ALJ indicated that those impairments caused no more than minimal limitations on his ability to engage in basic work activities and therefore considered them non-severe. (Tr. 17-18).

At step three, the ALJ concluded that Jeremy D. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15-17). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 15-17). The ALJ considered whether the severity of Jeremy D.'s mental impairments met or medically equaled the criteria of Listings 12.04, 12.05, 12.06, and 12.08, and Social Security Ruling 19-2p. (Tr. 83). The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. (Tr. 19-20). The ALJ indicated that a marked limitation meant the ability to function independently, appropriately,

effectively, and on a sustained basis was seriously limited, while an extreme limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 19). The ALJ found that Jeremy D. had a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing himself. (Tr. 19-20). As a result, the ALJ found that Jeremy D.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation. (Tr. 20). Therefore, the paragraph B criteria were not satisfied. (Tr. 20).

After consideration of the entire record, the ALJ assessed Jeremy D.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he is able to stand and walk four hours each in an eight hour day. He should have the option to change positions between sitting and standing without loss of production. He can climb ramps and stairs occasionally, but should never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He should never work at unprotected heights, and can have occasional exposure to dust, odors, fumes, and pulmonary irritants. He is able to perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line work). He is able to perform simple, work-related decisions and is able to interact with supervisors frequently, and with coworkers, occasionally, but should not be required to work in tandem with others. He should never be required to interact with the public.

(Tr. 21). After considering the evidence, the ALJ found that Jeremy D.'s medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 22). However, she found that the Jeremy D.'s statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 22).

At step four, the ALJ found that Jeremy D. had no past relevant work.  (Tr. 26).  However, she did find jobs that existed in significant numbers in the national economy that Jeremy D. could perform.  (Tr. 26-27).  Therefore, the ALJ found that Jeremy D. had not been under a disability, as defined in the Social Security Act, since February 7, 2019, the date the application was filed.  (Tr. 27).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence.  **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence.").  Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion."  ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* ***Bates***, 736 F.3d at 1098.  A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law.  ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."  ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that he is unable

4

"to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* **Williams v. Colvin**, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** *see* **Biestek v. Berryhill,** 139 S. Ct.

5

1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Jeremy D. has requested that the court remand this matter for additional proceedings. In his appeal, he alleges that the ALJ erred in evaluating medical opinion evidence and failed to accommodate for his limitations in concentrating, persisting, and maintaining pace.

Jeremy D. argues that the ALJ erred in evaluating the opinions of the state agency psychologists by failing to include their "checkbox" limitations in the RFC. The Social Security Administration's previous regulations entitled the opinions of certain physicians to controlling weight based on their status as a claimant's treating physician. However, the new regulations have done away with this requirement. *See* **20 C.F.R. § 416.920c** ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources"). Instead, ALJ's must consider all medical opinions based on factors set out by the Social Security Administration with *supportability* and *consistency* being the most important factors for the ALJ to discuss. **Kaehr v. Saul**, 2021 U.S. Dist. LEXIS 18500, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021) (emphasis added). An ALJ can, but are not required to, explain how they evaluated the remaining factors which include the physician's relationship with the claimant and any specializations. **20 C.F.R. §404.1520c**.

The state agency psychologists found that Jeremy D. was moderately limited in his ability to understand, remember, or apply information; moderately limited in his ability to interact with others; moderately limited in his ability to concentrate, persist, or maintain pace; and mildly limited in his ability to adapt or manage himself. (Tr. 75, 89). The State agency also provided

RFC limitations in their opinions, finding that Jeremy D. would be moderately limited in his abilities to: carry out detailed instructions, maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Tr. 79-80, 93-94).  In the narrative discussion, the state agency psychologists noted that Jeremy D. was believed to be malingering.  (Tr. 80, 95).  They also stated that although his concentration was moderately impacted, it "appear[ed] reasonable for tasks, and [he] appear[ed] to be able to tolerate superficial, casual interactions with others."  (Tr. 80, 95).  Finally, the state agency psychologists found that:

> The totality of evidence in [the] file suggests that the claimant [wa]s able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and interactions with coworkers and work situations; [and] able to deal with changes in a routine work setting.

(Tr. 80, 95).

The ALJ considered these opinions to be persuasive, finding them to be consistent with the evidence of the record, "which show[ed] that [Jeremy D.] was generally cooperative, had good eye contact, and normal attention span." (Tr. 25).  The ALJ found these opinions consistent with observations that Jeremy D. sometimes struggled with social interactions but was able to get along with others.   (Tr. 25). Jeremy D. alleges that the state agency psychologists' opinions included limitations that the ALJ failed to include in the RFC, despite finding the opinions persuasive.

The ALJ relied on Jeremy D.'s own reports in finding him moderately limited in concentrating, persisting, or maintaining pace.  (Tr. 20).  The ALJ noted that although Jeremy D.

7

reported being easily distracted, he also stated that he was able to finish what he started, enjoyed playing games on his tablet, and was able to pay bills and handle a savings account. (Tr. 20). The ALJ also found that his providers stated he had a normal attention span. (Tr. 20). Finally, the ALJ relied on Jeremy D.'s reports of going to school for his GED and looking for work. (Tr. 20). In the RFC assessment, the ALJ further found that Jeremy D. reported that he enjoyed building computers and reading. (Tr. 23).

Jeremy D. relies on a variety of cases that indicate the ALJ cannot solely rely on the narrative portion of the state agency consultant opinions but must also "adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms." ***DeCamp v. Berryhill***, 916 F.3d 671, 676 (7th Cir. 2019). Jeremy D. does not explain how the evidence in the record supports the need for more restrictive limitations, nor does he explain how the ALJ erred in relying on the state agency psychologists' opinions. The claimant bears the burden of supplying evidence to prove his claim of disability. ***Ribaudo v. Barnhart***, 458 F.3d 580, 583 (7th Cir. 2006); ***Scheck v. Barnhart***, 357 F.3d 697, 702 (7th Cir. 2004).

Jeremy D. argues that the ALJ failed to accommodate for the psychologists' opinions that he was moderately limited in his ability to understand and remember detailed instructions, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 78-79, 93-94). However, the psychologists specifically noted that the narrative section would further explain Jeremy D.'s limitations. (Tr. 78-79, 93-94). There, they explained that his concentration "appear[ed] reasonable for tasks" and that he could "tolerate superficial, casual interaction with others." (Tr. 80, 95). The state agency psychologists then opined that

8

Jeremy D. had the ability to understand, carry out and remember simple instructions; make judgments commensurate with functions of simple, repetitive tasks; respond appropriately to brief supervision and interactions with coworkers and work situations; and deal with changes in a routine work setting.  (Tr. 80, 95).  The ALJ properly relied on the state agency narrative opinions, as they explained the check-box limitations and were supported by the evidence in the record.  See **Urbanek v. Saul**, 796 F.3d Appx. 910, 915 (7th Cir. 2019).

Jeremy D. has provided no evidence to support more restrictive limitations. Instead, he relies on speculation that the check-box limitations provided by the state agency psychologists must require more restrictive limitations.  He speculates that the existence of moderate limitations would immediately require more restrictive limitations in the RFC.  Specifically, he claims that the moderate limitations noted by the state agency psychologists would suggest "likely intolerable" workplace behaviors and potentially disabling limitations related to attendance, additional breaks, and off-task behavior.  Such speculation cannot replace the evidence in the medical record, and Jeremy D. has not pointed to any evidence in the record to support his conclusions.  Moreover, the Seventh Circuit has found that "[a] 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair ….'  '[F]air' in ordinary usage does not mean 'bad' or 'inadequate.'"  **Pavlicek v. Saul**, 994 F.3d 777, 783 (7th Cir. 2021).  Jeremy D. has failed to explain how the narrative portions of the opinions were inconsistent with the checkbox limitations.  Jeremy D. may interpret the state agency psychologist opinions differently, "but the existence of different interpretations does not mean that the ALJ's finding was unsupported by substantial evidence."  **Lori W. v. Kijakazi**, 2021 WL 5905645, at *5 (N.D. Ind. Dec. 14, 2021).

Jeremy D. also asserts that that the ALJ erred in limiting him to occasional interaction

with coworkers when the state agency psychologists stated that he could respond appropriately to brief interactions with coworkers.  While the ALJ did not fully explain why she chose to limit Jeremy D. to "occasional" interactions rather than "brief" interactions, the ALJ supported her determination with substantial evidence.  The ALJ found that although Jeremy D.'s providers stated that he struggled with social interaction at times, he also was able to get along with others, generally was cooperative, and had good eye contact.  (Tr. 19).  Even so, the ALJ limited Jeremy D. to work that did not require working in tandem with others.  (Tr. 20, 25).

There is no requirement that the ALJ's RFC must include every limitation stated in a medical opinion.  Even though the ALJ found the state agency psychologist opinions persuasive, she did not adopt them in whole and properly supported her decision not to with substantial evidence.  She found that Jeremy D.'s social limitations were adequately accommodated for by limiting him to occasional interaction with coworkers and no work that would require him to work in tandem with others.  (Tr. 25).  The ALJ relied on the medical record which showed that Jeremy D. was able to get along with others despite some struggles with social interaction.  (Tr. 25).  Jeremy D. has provided no evidence that suggests that he should be limited to "brief" rather than "occasional" interaction with others.

Relatedly, Jeremy D. asserts that the ALJ did not adequately account for his moderate limitations in concentrating, persisting, and maintaining pace in the RFC analysis.  Jeremy D. argues that the limitations to "simple, routine, and repetitive tasks, but not at a production rate pace" does not accommodate for moderate limitations in concentration.

"The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." ***Young v. Barnhart***, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your

limitations"); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities"). The RFC is based upon medical evidence—including statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. That section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in that section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but [she] must provide a 'logical bridge' between the evidence and [her] conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate

11

conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support h[er] conclusion and explain why that evidence was rejected") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

The ALJ found that Jeremy D. had a moderate limitation in his ability to concentrate, persist, or maintain pace. (Tr. 19-20). The ALJ noted that despite reporting he was easily distracted, Jeremy D. also reported that he was able to finish what he started, enjoyed playing games on his tablets, was able to pay bills and count change, and was able to handle a savings account. (Tr. 19-20). The ALJ also noted that his providers reported that Jeremy D. had a normal attention span. (Tr. 20). Finally, the ALJ noted that Jeremy D. reported going to school for his GED and was looking for work. (Tr. 20). In the RFC analysis, the ALJ again reiterated that Jeremy D. presented with normal attention span at mental status examinations and enjoyed playing games, building computers, watching TV, and reading. (Tr. 23). The ALJ then provided for the moderate limitations in concentrating, persisting, and maintaining pace by limiting Jeremy D. to:

> Simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line work). He is able to perform simple, work-related decisions and is able to interact with supervisors frequently, and with coworkers, occasionally, but should not be required to work in tandem with others. He should never be required to interact with the public.

(Tr. 21).

Jeremy D. asserts that the ALJ's RFC did not adequately account for his moderate limitations in concentrating, persisting, or maintaining pace by arguing that "simple tasks" did not accommodate such limitations as found in *Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015). He also argues that finding him incapable of working at a production rate pace did not

12

provide any guidelines as to the pace at which he can work. The Seventh Circuit has held that "when it comes to the RFC finding … the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence, or pace." **Crump v. Saul**, 932 F.3d 567, 570 (7th Cir. 2019) (internal citations omitted). "An ALJ must incorporate a claimant's limitations, including moderate CPP limitations, when crafting the RFC …," for courts "have frowned at the notion that restriction to simple tasks adequately accommodates moderate CPP limitations." **Bruno v. Saul**, 817 Fed.Appx. 238, 242 (7th Cir. 2020). The concern is that by imposing a restriction to simple tasks as a way to account for moderate CPP limitations, the restriction will then be used as a "one-size-fits-all solution without delving into an individualized assessment of the claimant's specific symptoms." **Bruno v. Saul**, 817 Fed.Appx. at 242. However, a restriction to simple, routine, and repetitive tasks with social interaction limitations may appropriately accommodate a claimant's moderate limitations in concentrating, persisting, and maintaining pace if the ALJ supports the decision with substantial evidence, and "[i]t is unclear what kinds of work restrictions might address [the claimant's] limitations in concentration, persistence, or pace." **Jozefyk v. Berryhill**, 923 F.3d 492, 498 (7th Cir. 2019).

Jeremy D. fails to meet his burden of proof in providing evidence that he is more limited than the ALJ's RFC. The Seventh Circuit has upheld ALJ decisions related to concentration, persistence, and pace where a claimant "has not provided any other credible medical evidence indicating that his symptoms required additional RFC restrictions to account for CPP limitations beyond those included in the ALJ's decision." **Recha v. Saul**, 843 Fed. Appx. 1, at *10-11 (7th Cir. 2021). Jeremy D. relies solely on case law without connecting it to the facts in his own case and has provided no evidence that he cannot concentrate, persist, or maintain pace appropriately

with the limitations provided in the RFC.

Moreover, no physician in the record indicated that Jeremy D. required further limitations.  An ALJ does not commit an error when "there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."  **Rice v. Barnhart**, 384 F.3d 363, 370 (7th Cir. 2004).  The state agency psychologists found that Jeremy D.'s concentration "appear[ed] reasonable for tasks" and that he could "tolerate superficial, casual interaction with others."  (Tr. 80, 95).  They opined that Jeremy D. had the RFC to understand, carry out and remember simple instructions, make judgments commensurate with functions of simple, repetitive tasks, respond appropriately to brief supervision and interactions with coworkers and work situations, and deal with changes in a routine work setting.  (Tr. 80, 95).  The ALJ's RFC was nearly identical to the state agency psychologists' opinions.  Jeremy D. has provided no evidence that he requires further limitations to accommodate his moderate limitations, and no medical opinion indicates the need for such.

 Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 19th day of September, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge